# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SAVARIA USA, INC. *et al.*,                          *

     *Plaintiffs*,                                    *

     v.                                             *          Civil Action No. RDB-24-1311

ELEVATOR WORKS, LLC *et al.*,                        *

     *Defendants.*                                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Savaria USA, Inc. and Savaria Concord Lift, Inc. (collectively, "Plaintiffs" or "Savaria") have moved for a temporary restraining order ("TRO") against Defendants Elevator Works, LLC and four of Plaintiffs' former employees: Vincent Russo, Brian Beck, Brandon Wildberger, and David McGuirk (collectively, "Defendants").  (ECF No. 1.)[1]  Through their sixteen-count Complaint, Savaria alleges that their former employees breached their respective employment agreements with Savaria (Counts I, II, III, IV, V, VI, and VII); violations of the Defend Trade Secrets Act ("DTSA") and Maryland Uniform Trade Secrets Act ("MUTSA") (Count VIII);[2] a claim for unfair competition under Maryland law (Count IX); violations of the Computer Fraud and Abuse Act ("CFFA") (Count X); and claims under the Lanham Act and

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.  Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

[2] Plaintiffs' Complaint appears to erroneously include Count VIII twice.  (*See* ECF No. 2 ¶¶ 119–129, 130–140.)  In addition, Plaintiffs' Complaint appears to bring Count VIII, titled "Misappropriation of Trade Secrets under Defend Trade Secrets Act Against All Defendants" under the DTSA (ECF No. 2 ¶¶ 119–129), though their Motion suggests it advances this claim under both DTSA and the MUTSA.  (ECF No. 1-1 at 11–13.)  Nevertheless, under both the MUTSA and DTSA, a plaintiff must show (1) that the documents at issue are trade secrets and (2) that the defendant misappropriated those trade secrets.  *See* 18 U.S.C. §§ 1836(b)(1), 1839(3), 1839(5); Md. Code, Com. Law § 11-1201(c).

for infringement more generally (Counts XI, XII, XIII, XIV and XV).  (ECF No. 2.)  Savaria also seeks preliminary and injunctive relief (Count XVI).  (*Id.*)

After reviewing the parties' submissions, this Court held a hearing on May 14, 2024. Upon the agreement of the parties and without any acknowledgement of wrongdoing, this Court issued an Order (1) enjoining Defendants Beck, Wildberger, and McGuirk from soliciting Plaintiffs' customers that Defendants serviced or became aware of while employed by Plaintiffs for a period of one year following their resignation from Plaintiffs' employment and (2) permanently enjoining the Defendants Elevator Works, Russo, Beck, Wildberger, and McGuirk from accessing or utilizing Plaintiffs' confidential customer list.  (ECF No. 21.)  Nevertheless, the parties continued to dispute whether Plaintiffs were entitled to the remaining injunctive relief requested in their Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1) and the Motion to Expedite Discovery for Preliminary Injunction Hearing (ECF No. 3), both of which remain pending on this Court's docket and are addressed in the instant Memorandum Opinion.

For the reasons stated below as well as on the record at this Court's May 14, 2024 hearing, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1) is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiffs' request is GRANTED with respect to the relief afforded to the Plaintiffs in this Court's May 14, 2024 Order (ECF No. 21).  It is DENIED in all other respects.  Plaintiffs' Motion to Expedite Discovery for Preliminary Injunction Hearing (ECF No. 3) is DENIED.

## BACKGROUND

I.   **Background on Parties and Employment Agreements Between Savaria and Individual Defendants**

A.   **Background on Plaintiffs**

Savaria is "one of North America's leaders in the accessibility industry by providing accessibility solutions for the for the elderly and physically challenged to increase their mobility and independence.   Savaria designs, manufactures, distributes, and installs accessibility equipment, such as stairlifts, vertical and inclined wheelchair lifts, and elevators for residential and commercial use."  (ECF No. 6 at 3 ¶ 4.)  Sometime in February 2017, Savaria acquired Premier Lifts, Inc. ("Premier Lifts"), a leading elevator dealer in the Baltimore-Washington, DC area that sold, installed, and serviced a full range of elevator and lift products in Maryland, Washington, DC, and Virginia.  (*Id.* at 3 ¶ 5.)  Through that purchase, Savaria acquired Premier Lifts's assets including its trademarks, trade names, trade dress, and other intellectual property. (*Id.*)

B.   **Vincent Russo and Elevator Works**

Vincent Russo worked in sales for Premier Lifts from October 2007 until March 25, 2022.  (*Id.* at 4 ¶ 11; ECF No 17-1 at 3.)  Sometime after Plaintiffs acquired Premier Lifts, Russo signed an employment agreement.  (*See* ECF No. 6 at 11–25.)  This employment agreement contained an employee non-solicitation clause providing that, for a period of 24 months after leaving Savaria, Russo would not:

> directly or indirectly, for [Russo's] own account or on behalf of any other Person, hire, engage, solicit, or attempt to solicit, as an employee, independent contractor, consultant or otherwise, any employee or contractor of [Savaria] with whom [Russo] worked, interacted or developed relationships with during the [Russo's] employment with [Savaria] without the prior written consent of

[Savaria].

(*Id.* at 20.)   This employee non-solicitation clause terminated on March 25, 2024.   (ECF No. 1-1 at 4.)

Russo's employment agreement also contained a non-compete clause providing that for a period of 24 months after leaving Savaria, Russo would not:

> directly or indirectly, within the states of Delaware, Maryland, and Virginia . . . and within the District of Columbia or any geographical area in which [Savaria] did business within 3 years prior to the date of [Russo's] termination of employment . . . , whether as an employee, agent, officer, director, manager, consultant, advisor, contractor or otherwise, in a capacity that is the same as or similar to the capacity in which [Russo] worked for [Savaria], engage in any business that competed with [Savaria] as of the termination of [Russo's] employment with [Savaria] or for which [Russo] has knowledge of [Savaria's] intent to offer within the twelve (12) months immediately following the termination of [Russo's] employment with [Savaria.]

(ECF No. 6 at 20.)   This non-compete clause terminated on March 25, 2024.   Importantly, Russo appears to be the only former Savaria employee subject to a non-compete.

Russo's employment agreement also contained a customer non-solicitation clause providing that, for a period of 24 months after leaving Savaria, Russo would not:

> directly or indirectly, for [Russo's] own account or on behalf of any other Person (other than [Savaria]): (a) induce, attempt to induce, solicit or otherwise cause or attempt to influence any Person to (1) cease being a client or customer of, or to not become a client or customer of, [Savaria], (2) divert any business from or reduce the amount of business of such Person with [Savaria] or (3) discontinue or alter, in a manner adverse to [Savaria], such business relationship; (b) interfere with, disrupt or attempt or take any action intended to interfere with, reduce or disrupt, the contractual business relationship between [Savaria] and any Person; (c) solicit for business within the Territory any existing customer or customer of [Savaria] during the 3 year period prior [Russo's] termination of employment with [Savaria].

(ECF No. 6 at 20–21.)   This customer non-solicitation clause, which was broader than Savaria's with the other individual Defendants in this case,   was set to terminate on

4

March 25, 2024.  (ECF No. 1-1 at 4.)

His employment agreement further provided that "upon termination of [his] employment for any reason, [Russo] shall neither take, retain, or make copies of any Confidential Information or Employee Work Product."  (ECF No. 6 at 19.)

On or about July 6, 2023, Russo formed Defendant Elevator Works, LLC as a limited liability company in Maryland.  (*Id.* at 5 ¶ 15.)  In their submission to this Court, Defendants contend that "[t]he scope of Elevator Works' business is the inspection and servicing of private residential elevators and lifts as well as the inspection and servicing of commercial wheelchair lifts" (the "non-disclosure clause").  (ECF No. 17-1 at 4 (citing ECF No. 17-2 ¶ 13).)

### C.  Brian Beck

Brian Beck worked in operations management for Premier Lifts from October 2008 until  March 15, 2024.  (ECF No. 1-1 at 5 ¶ 14; ECF No. 17-8 ¶ 2.)  While an employment agreement between Savaria and Beck is not included with Plaintiffs' submissions, Plaintiffs allege that Beck also signed an employment agreement during his tenure at Savaria that mirrors that of Wildberger and McGuirk, which are discussed *infra*.  (ECF No. 1-1 at 5 ¶ 14.) According to Plaintiffs, Beck's employment agreement contained a non-disclosure clause like that in Russo's employment agreement, and a customer non-solicitation clause whereby Beck agreed that for one year following his resignation, he would not:

> solicit by mail, phone, electronic communications, personal meeting, or any other means, either directly or indirectly, business from any customer of [Savaria] who you served or whose name became known to you during your employment with [Savaria].

(*Id* at 5.)  Importantly, the customer non-solicitation clause in Beck's employment agreement

was much narrower than the customer non-solicitation clause in Russo's employment agreement.  (*Compare id. with* ECF No. 6 at 20–21.)  Beck is presently employed by Elevator Works.  (ECF No. 6 at 5 ¶ 14.)

### D.  Brandon Wildberger

From June 21, 2017 to March 22, 2024, Savaria employed Defendant Brandon Wildberger as a technician.  (ECF No. 6. at 4 ¶ 12.)  Plaintiffs attached his employment agreement to their submissions, (*id.* at 26–34), which also contained a non-disclosure clause (*id.*) and a customer non-solicitation clause whereby Wildberger agreed that for one year following his resignation, he would not:

> solicit by mail, phone, electronic communications, personal meeting, or any other means, either directly or indirectly, business from any customer of [Savaria] who you served or whose name became known to you during your employment with [Savaria].

(*Id.* at 32.)  As noted above with Beck, the customer non-solicitation clause in Wildberger's employment agreement was much narrower than the customer non-solicitation clause in Russo's employment agreement.  (*Compare id. with* ECF No. 6 at 20–21.)  Wildberger is also presently employed by Elevator Works.  (*Id.* at 4 ¶ 12.)

### E.  David McGuirk

From June 13, 2017 to January 5, 2024, Savaria employed Defendant David McGuirk as a technician.  (ECF No. 6 at 4–5 ¶ 13.)  McGuirk's employment agreement with Savaria (*id.* at 35–43) contained a non-disclosure clause (*id.*) and a customer non-solicitation clause whereby McGuirk agreed that for one year following his resignation, he would not:

> solicit by mail, phone, electronic communications, personal meeting, or any other means, either directly or indirectly, business from any customer of [Savaria] who you served or whose name became known to you during your

employment with [Savaria].

(*Id.* at 41.)  As noted above with Beck and Wildberger, the customer non-solicitation clause in McGuirk's employment agreement was much narrower than the customer non-solicitation clause in Russo's employment agreement.  (*Compare id. with* ECF No. 6 at 20–21.)  McGuirk is presently employed by Elevator Works.  (*Id.* at 4–5 ¶ 13.)

## II.   The Defendants' Alleged Wrongful Conduct

### A.   In July 2023, Russo Forms Competing Business.

On or about July 6, 2023, Russo formed Defendant Elevator Works, LLC as a limited liability company in Maryland.  (ECF No. 1-1 at 5.)  Based on Google reviews featured on Elevator Works' website, Plaintiffs allege that Defendants Elevator Works and Russo began to compete with Savaria before March 25, 2024, in violation of the non-compete agreement executed January 30, 2017 between Savaria and Russo.  (*Id.*)  In their Response, Defendants contend that "[f]rom the date of its organization until March 19, 2024, Elevator Works did not actively conduct business and provided no work or services to any person or entity."  (ECF No. 17-1 at 4 (citing ECF No. 17-2 ¶ 14).)  Defendants contend the first date Elevator Works performed any services was on March 19, 2024.  (*Id.* (citing ECF No. 17-2 ¶ 15).)

### B.   Beginning in Fall 2023, Russo Allegedly Solicited Beck, Wildberger, and McGuirk to Work for Elevator Works While Beck, Wildberger, and McGuirk Were Employed by Plaintiffs.

Plaintiffs further allege that, beginning in the fall of 2023, while Defendants Beck, Wildberger, and McGuirk were still employed by Plaintiffs, Russo solicited Beck, Wildberger, and McGuirk to work for Elevator Works in violation of the employee non-solicitation clause in his employment agreement, which was set to expire March 25, 2024.  (ECF No. 1-1 at 5.)  As noted *supra*, McGuirk left Savaria's employment on January 5, 2024, Beck left on

7

March 15, 2024, and Wildberger left March 22, 2024, and they are all presently employed by Elevator Works.

### C. Sometime Before Leaving Plaintiffs' Employment, Beck Saves Customer List to his Personal OneDrive Account.

Plaintiffs further allege that, while Beck was still employed by Savaria, he "made and retained copies of the customer list" by adding the list to his personal OneDrive. (ECF No. 1-1 at 6.) As further discussed below, Plaintiffs claim that the Defendants are using this information and have used the information to poach their clients. (*Id.*) Plaintiffs further allege that Beck saved a copy of a list of Plaintiffs' technicians which includes "their compensation and licensure information." (*Id.* at 5, 9.)

Beck contends that he "set up a Microsoft OneDrive account[] so that he could access files when working for Premier Lifts remotely." (ECF No. 17-1 at 5.) He further contends that he has deleted such files and did not use the customer list or any other proprietary information after he left Savaria. (*Id.* at 6.)

### D. Beginning in February 2024, Defendants Allegedly Infringed Savaria's Trademark and Trade Dress in a Mailing Campaign and on Elevator Works' Website.

Plaintiffs allege that Defendants infringed on Savaria's trademark and trade dress by using Plaintiffs' logos, trade names, and trade dress in a mailing campaign conducted in February 2024 and on the Elevator Works website. (ECF No. 1-1 at 6.) With respect to the mailing campaign, the declaration of Plaintiffs' counsel Brittany Whitesell Biles (ECF No. 4) provides that:

> In our telephone conversations between April 24 and April 29, Mr. Hirsch represented to me that Defendant Elevator Works used Plaintiffs registered trademarks on an advertisement that Defendants caused to be circulated to

13,588 recipients through a direct mail campaign.

(*Id.* at 4 ¶ 16.)   Defendants contend that they "did not use Savaria's customer list for [the February 2024] mailing" and that Russo obtained his list from "publicly available sources, including publicly available real estate listings and townhome community websites" and the "Maryland Department of Labor Licensing and Regulations' ("DLLR") database of all public elevators and their owners listed by [c]ounty provides a publicly available source for Elevator Works' solicitation of customers."   (ECF No. 17-1 at 1–2, 4–5 (citing ECF Nos. 17-2 ¶¶ 17– 22, 30–31).)

With respect to the allegations of infringement on Elevator Works' website, Savaria's North American Sales Director Allan Thompson (ECF No. 6) provides that:

> On or about March 28, 2024, I viewed Elevator Works' website and observed the registered marks for Savaria, Serial Number of 77960467 and a Registration Number of 4184685, and Garaventa Lift, Serial Number of 79024708 and a Registration Number of 3288347 prominently displayed. Elevator Works was never authorized or provided permission to prominently display those registered trademarks on its website.

(*Id.* at 8 ¶ 27.)   Thompson further provides that sometime after Savaria served cease-and-desist letters, Elevator Works stopped displaying these registered marks.   (*Id.* at 8 ¶ 28.)   In their Response, Defendants note that "[u]pon receiving a demand to remove all references to Savaria from its advertising, Elevator Works immediately removed all references to Savaria from its website."   (ECF No. 17-1 at 6.)   Defendants maintain that their use was nominative fair use, and thus not actionable under 15 U.S.C. § 1125(c)(3)(A).   (*Id.* at 13–15.)

## III.   Procedural History

Sometime in late March/early April 2024, Plaintiffs became aware that Defendant Beck took confidential information from Savaria's computer systems and that Defendants Beck and

Wildberger resigned from Savaria to work at Elevator Works with Defendant Russo. (ECF No. 1-1 at 6.)

On April 9, 2024, Savaria sent the individual Defendants cease-and-desist letters, though Plaintiffs' submissions do not include the cease-and-desist letter sent to McGuirk. (*Id*; *see also* ECF No. 6 at 7–18.) Therein, Plaintiffs demand that the individual Defendants "immediately cease and desist their violations of their employment agreements, use of Savaria's confidential information, use of Savaria's intellectual property, and to execute an affidavit attesting that they were no longer using Savaria's confidential information or intellectual property or otherwise engaging in unfair competition with Savaria." (ECF No. 1-1 at 6.)

On April 16, 2024, Savaria sent additional correspondence to Russo, Beck, and Wildberger, after receiving no response to the April 9, 2024 cease-and-desist letters. (*Id*. at 7.) Plaintiffs represent that Defendants Elevator Works and Russo hired counsel who engaged in discussions to try to resolve the dispute out of court. (*Id*.) According to Plaintiffs, Defendants continued to engage in violative, infringing conduct and unfair competition, citing reviews that "reflect that Defendants were continuing to provide services to Savaria customers after the repeated cease-and-desist requests and while counsel for Savaria and counsel for Elevator Works and Russo were attempting to negotiate an end to Defendants' violative, infringing conduct and unfair competition." (*Id*.)

And so, approaching midnight on May 3, 2024, Savaria filed their Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1), followed by a sixteen-count Complaint (ECF No. 2) on May 4, 2024. Also on May 4, 2024, Plaintiffs filed a Motion for Expedited Discovery. (ECF No. 3.)

On Monday, May 6, 2024, this Court held an on-the-record telephone conference. (ECF No. 9.)  Thereafter, the Court docketed a letter order memorializing the conference and confirming that the Court had reserved Tuesday, May 14, 2024 at 11:00 AM for a hearing on the Plaintiffs' request for a TRO.  (ECF No. 11.)  The Court also instructed the parties to follow an expedited briefing schedule for briefing.  (*Id.*)

Defendants Elevator Works and Russo responded in opposition to Plaintiffs' request for a TRO (ECF No. 17), and Plaintiffs replied (ECF No. 18).  On May 14, 2024, the Court heard argument from the parties.  The pending motions (ECF Nos. 1, 3) are ripe for review.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions.  Both are "'extraordinary remedies involving the exercise of [a] very far-reaching power to be granted only sparingly and in limited circumstances.'"  *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1992)).

To obtain a temporary restraining order, the movant must satisfy the test set forth by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), which requires a showing that:

(1) the movant is likely to succeed on the merits;
(2) the movant is likely to suffer irreparable harm absent preliminary relief;
(3) the balance of equities favors the movant; and
(4) an injunction is in the public interest.

555 U.S. at 20.  Courts within the jurisdiction of the Fourth Circuit require that each of these factors be "satisfied as articulated."  *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (citation omitted).  Thus, a court need not address all four *Winter* factors if one or more factors is not

satisfied.  *Henderson ex rel. NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018).

The plaintiff "bears the burden of establishing that each of these factors supports granting the injunction."  *Direx*, 952 F.2d at 812 (citation omitted).  As the Fourth Circuit recently explained in *Mahmoud v. McKnight*, No. 23-1890 (4th Cir. May 15, 2024)

> "A party . . . is not required to prove his case in full at a preliminary-injunction hearing," and the process ordinarily entails procedures "that are less formal and [considered upon] evidence that is less complete than in a trial on the merits." Despite considering the case at the early stages of the proceedings, to make the requisite showings, a plaintiff seeking a preliminary injunction generally cannot rely on mere allegations in the complaint but must come forward with some evidence showing a likelihood of success on the merits.

*Id.* at 18 (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Winter*, 555 U.S. at 20–21).

## ANALYSIS

Savaria contends that it has satisfied the test set forth in *Winter*.  (ECF Nos. 1-1, 18.) Defendants argue that Savaria cannot satisfy any of the four factors, (ECF No. 17-1), though both parties' arguments are chiefly focused on the first factor: whether Plaintiffs are likely to succeed on the merits of their claims.  The parties also disagree as to whether Plaintiffs are entitled to expedited discovery.  (ECF No. 3.)  The Court discusses Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1) before briefly discussing Plaintiffs' request for expedited discovery (ECF No. 3).

### I. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1)

#### A. Likelihood of Success on the Merits

To obtain injunctive relief, the movant bear the burden to show that they are likely to succeed on one of their claims.  *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 2d 742, 747 (D. Md. 2020).  As noted above, movants are not required to prove their case in full at a

preliminary injunction hearing, *Mahmoud*, No. 23-1890 at 18 (quoting *Camenisch*, 451 U.S. at 395), and the process entails procedures "'that are less formal and [considered upon] evidence that is less complete than in a trial on the merits.'" *Id.* Nevertheless, a plaintiff seeking a preliminary injunction generally cannot rely on mere allegations in the complaint but must come forward with some evidence showing a likelihood of success on the merits. *Id.* (citing *Winter*, 555 U.S. at 20–21).

Plaintiffs' Motion for a Temporary Restraining Order addresses its likelihood of success on their (1) breach of contract claims against Beck (Counts IV and V), McGuirk (Counts VI), and Wildberger (Count VII) (ECF No. 1-1 at 8–11); (2) misappropriation claim against all Defendants (Count VIII) (ECF No. 1-1 at 11–13); (3) unfair competition claim under Maryland law against Elevator Works (Count IX) (ECF No. 1-1 at 13); (4) Computer Fraud and Abuse Act claim against Beck and Elevator Works (Count X) (ECF No. 1-1 at 14–16); and (5) trademark infringement claim against Elevator Works (Count XIV) (ECF No. 1-1 at 16–18). Defendants contend that Plaintiffs are not likely to succeed on the merits of any of their claims, though they likewise limit their discussion to the counts addressed in Savaria's Motion. (ECF No. 17-1 at 7–15).

### 1. Breach of Contract Claims Against Beck, McGuirk, and Wildberger (Counts IV, V, VI, and VII)

To state a claim for breach of contract under Maryland law, a plaintiff must prove "a contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)). Formation of a valid contractual obligation requires mutual assent (an offer and acceptance), an agreement definite in its terms, and sufficient consideration. *Spaulding v. Wells*

*Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013).

Through Count IV of their Complaint (ECF No. 2 ¶¶ 84–92), Plaintiffs allege that Beck violated the non-disclosure provision of his employment agreement by placing the Plaintiffs' customer and tech lists on his personal OneDrive account in order to retain access after his March 15, 2024 resignation. (ECF No. 1-1 at 8–10.) Plaintiffs emphasize that Beck was "contractually obligated under his employment agreement to 'not, either during the term of [his] contract employment or any time, thereafter, disclose to any person, unless required by law, Confidential Information relating to [Savaria] or its affiliates.'" (*Id.* at 8–9.) According to Plaintiffs, Defendants' attorney David Hirsch conceded that Beck had access to this document as recently as April 2024. (*Id.* at 10 (citing ECF No. 4 at 4 ¶ 17).) Thus, Plaintiffs contend that they are likely to succeed on the merits of Count IV.

Defendants do not dispute that, at some point, Beck had Savaria's customer and tech lists. Rather, Defendants argue that, assuming an employment agreement exists between Beck and Savaria, Beck's conduct did not violate the agreement because his retention of such lists was done inadvertently and he never disclosed such lists to anyone else, nor has he used such information during his employment with Elevator Works. Indeed, Count IV is undeveloped. Notably, Plaintiffs do not attach Beck's employment agreement to their submissions. While Plaintiffs characterize Beck's narrative as "self-serving," (ECF No. 18 at 4), Plaintiffs bear the burden to establish that they are likely to succeed on the merits. *Winter*, 555 U.S. at 20. While acknowledging the early stages of the proceedings, this Court finds that Plaintiffs have not come forward with sufficient evidence showing a likelihood of success on the merits with respect to Count IV.

14

Through Counts V, VI, and VII of their Complaint (ECF No. 2 ¶¶ 93–118), Plaintiffs allege that Beck, McGuirk, and Wildberger each violated the non-solicitation provisions of their employment agreement by soliciting and affording Elevator Works the means to solicit Savaria's customers. (ECF No. 1-1 at 10–11.) Plaintiffs emphasize that Beck, McGuirk, and Wildberger agreed in their employment agreements that they would not for a period of one year following the termination of their employment "solicit by mail, phone, electronic communications, personal meeting, or any other means, either directly or indirectly, business from any customer of [Savaria] who you served or whose name became known to you during your employment with [Savaria]." (*Id.* at 10.) Savaria notes that "[o]ver the course of the last month and a half, . . . Elevator works has received 17 online customer reviews," and according to Savaria, eight of those reviews were posted by Savaria's former customers. (*Id.*) Plaintiffs emphasize several reviews specifically referencing the individual Defendants providing the relevant services. (*Id.*) Thus, Plaintiffs contend that they are likely to succeed on the merits of Counts V, VI, and VII.

Defendants Beck, McGuirk, and Wildberger admit that they are performing services for former Savaria customers. However, they contend that doing so does not violate the non-solicitation provision.[3] The Court agrees. Simply stated, while the non-solicitation provision prohibits Defendants' from soliciting Plaintiffs' customers that Defendants serviced or became aware of while employed by Plaintiffs for a period of one year following their

---

[3] As noted, Defendants Beck, McGuirk, and Wildberger agreed, without any acknowledgement of wrongdoing, to the Court's order enjoining them from soliciting Plaintiffs' customers that Defendants serviced or became aware of while employed by Plaintiffs for a period of one year following their resignation from Plaintiffs' employment. (ECF No. 21.)

resignation from Plaintiffs' employment, it does not prohibit Defendants from performing services for such customers.  Claims that Beck, McGuirk, and Wildberger have performed services for Plaintiffs' customers on behalf of Elevator Works, without more, fail to demonstrate the solicitation of customers, and Defendants' actions, as presented to the Court, do not indicate that Beck, McGuirk, and Wildberger violated the non-solicitation agreement. Without more, Plaintiffs have not provided the Court with adequate support at this stage in the proceedings to find that Savaria is likely to succeed on their breach of contract claims in Counts V, VI, and VII.

### 2. Misappropriation of Trade Secrets Claim (Count VIII)

Through Count VIII of their Complaint (ECF No. 2 ¶¶ 119–129), Plaintiffs allege Defendants misappropriated their trade secrets through Beck's acquisition and retention of the trade secrets including the customer list and technician list.  (ECF No. 1-1 at 11–13.) Plaintiffs' Motion also claims that Defendants misappropriated Savaria's trade secrets "to the extent that Defendants wrongfully retained Plaintiffs' custom diagnostic tool," (*id.* at 11), an allegation that is limited to paragraph 46 of Plaintiffs' Complaint (ECF No. 2 ¶ 46) and unadvanced by Plaintiffs during the hearing.

Under both the MUTSA and DTSA, a plaintiff must show (1) that the documents at issue are trade secrets and (2) that the defendant misappropriated those trade secrets.  *See* 18 U.S.C. §§ 1836(b)(1), 1839(3), 1839(5); Md. Code, Com. Law § 11-1201(c).  The DTSA and the MUTSA define a trade secret in "substantially the same manner."  *Md. Physician's Edge, LLC v. Behram*, No. DKC-17-2756, 2019 U.S. Dist. LEXIS 163536, 2019 WL 4573417, at *5 (D. Md. Sept. 20, 2019).  Both statutes require that (1) the information derive economic value

from being not readily ascertainable and (2) that the owner of the purported trade secret employ reasonable measures to keep the information secret. *Id.*; *see also Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 129 (D. Md. 2020). As for misappropriation, the DTSA provides that occurs "when a person either (1) acquires a trade secret while knowing, or having reason to know, that the trade secret was acquired by improper means, 18 U.S.C. § 1839(5)(A), or (2) uses or discloses the trade secret after acquiring it through improper means, *id.* § 1839(5)(B)(i)." *Teeters*, 441 F. Supp. 3d at 132.

Assuming arguendo that Plaintiffs' customer and technician lists are trade secrets, Plaintiffs have not established that the Defendants misappropriated such lists. While Plaintiffs point to a screenshot of Beck's OneDrive account as circumstantial evidence of misappropriation, Plaintiffs could not demonstrate that Defendants actually have used or are using their trade secrets. In a declaration submitted to this Court, (ECF No. 17-8), Beck represents that he deleted the alleged trade secrets and "never used any customer list or other proprietary information from [Plaintiffs] to solicit customers [or otherwise assist] Elevator Works." (*Id.* ¶¶ 9, 10, 11, 12, 13.) At this juncture, Plaintiffs have not advanced sufficient evidence to the contrary. On the evidence before the Court, Plaintiffs are not likely to succeed on the merits of Count VIII.

### 3.   Unfair Competition Claim Under Maryland Law (Count IX)

Through Count IX of their Complaint (ECF No. 2 ¶¶ 141–147), Plaintiffs allege Elevator Works acquired, retained, and used Savaria's confidential information and trade secrets acquired from former employees and used such information and trade secrets to market, solicit, and perform services for Savaria's customers, and that Elevator Works has

used Savaria's trademarks, tradenames, and trade dress to do so, jeopardizing Savaria's business and goodwill through unfair methods.  In their Motion, Plaintiffs emphasize their allegation that Beck copied confidential information from Plaintiffs' computer systems to provide the Defendants with such information to jump start their business and directly compete with Savaria.  (ECF No. 1-1 at 14.)

"There are no specific elements required to establish unfair competition under Maryland law." *LSR, Inc. v. Satellite Restaurants Inc. Crabcake Factory USA*, Civ. No. SAG-17-CV-03722, 2020 U.S. Dist. LEXIS 150545, 2020 WL 4903902, at *6 (D. Md. Aug. 20, 2020). Instead, "[w]hat constitutes unfair competition in a given case is governed by its own particular facts and circumstances." *Balt. Bedding Corp. v. Moses*, 34 A.2d 338, 342 ( Md. 1943).  The underlying premise of the law of unfair competition is that "no one . . . is justified in damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort." *Id.*

In their Motion, Savaria points to *Brightview Group, LP v. Teeters*, 441 F. Supp. 3d 115 (D. Md. 2020).  (ECF No. 1-1 at 13–14.)  In that case, Judge Gallagher found that Brightview had supplied ample evidence to justify its request for injunctive relief, noting the "record is rife with evidence that [defendants] used Brightview proprietary and confidential information, while they were still employed by Brightview, to begin a competing senior living business." *Brightview Grp.*, 441 F. Supp. 3d at 135.  In so holding, Judge Gallagher emphasized that "[t]his is not a case in which [defendants] have used publicly available documents, which would favor against an unfair competition claim." *Id.* (citing *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 692 (D. Md. 2012)).

The instant case, however, is readily distinguishable from *Brightview.*  As discussed

above and on the record at the May 14, 2024 hearing, the "record is [not] rife with evidence that [Defendants] used [Savaria's] proprietary and confidential information."  With respect to Plaintiffs' mention of Defendants' use of their trademarks, Defendants' admitted use of Plaintiffs' trademarks likely constitutes nominative fair use, as further discussed *infra*.  In brief, while Plaintiffs assert that Defendants have unfairly competed with Savaria, Plaintiffs have not established that they are likely to succeed on the merits of Count IX at this early stage of the proceedings.

### 4.  Computer Fraud and Abuse Act Claim (Count X)

Through Count X of their Complaint (ECF No. 2 ¶¶ 148–150), Plaintiffs allege that Beck had permission to use Savaria's confidential information to advance Savaria's business interests during his employment, but he exceeded his authorized access and acted without authorization when he took Savaria's confidential information from its computer systems to his personal OneDrive to use that information after his employment with Savaria terminated. Plaintiffs allege that Elevator Works hired Beck and is vicariously liable for the breaches caused during Beck's employment with Elevator Works.  (*Id.*)  While no amount of loss is mentioned in Plaintiffs' Complaint, Plaintiffs' Motion indicates the loss to Savaria exceeds $5,000.  (ECF No. 1-1 at 16.)

The Computer Fraud and Abuse Act ("CFAA") is a civil and criminal anti-hacking statute designed to prohibit the use of hacking techniques to gain unauthorized access to electronic data.  By its terms, the statute forbids "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer." 18 U.S.C. § 1030(a)(2).  "Exceed[ing] authorized access" is explicitly

defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled to obtain or alter."  18 U.S.C. § 1030(e)(6).

Here, Savaria contends that Beck exceeded his authorized access and acted without authorization when he took the customer list and transferred the data for use at Elevator Works.  (ECF No. 1-1 at 15–16.)  Plaintiffs have not met their burden to establish that they are likely to succeed on the merits of their claim that Defendants have engaged in or are likely to engage in practices that violate the CFFA, despite their assertions to the contrary.

### 5.  Trademark Infringement Claim (Count XIV)

Count XIV of Plaintiffs' Complaint is one of trademark infringement, though Savaria does not indicate whether they bring this Complaint under the Lanham Act, 15 U.S.C. § 1114(1) or common law trademark infringement.  Savaria's Motion suggests that they assert both common law trademark infringement and trademark infringement under the Lanham Act.  (ECF No. 1-1 at 16–17.)  Nevertheless, common law trademark infringement under Maryland law requires proof of the same elements as § 1114(1), and, accordingly, this oversight is of little consequence.  *See Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 n.3 (4th Cir. 1990); *see also A.C. Legg Packing Co. v. Olde Plantation Spice Co.*, 61 F. Supp. 2d 426, 432 (D. Md. 1999) ("[Plaintiff's] claim of trademark infringement under federal law also suffices to establish its claim of trademark infringement under the common law of Maryland.").

Through Count XIV of their Complaint .  (ECF No. 2 ¶¶ 174–178) , Plaintiffs emphasize that it holds registered trademarks of its logos and those of Garaventa Lift, which is owned by Plaintiffs, and without Savaria's consent or authorization, Elevator Works used

these logos in connection with the sale, offering for sale, or advertising of goods and services in a manner likely to confuse and deceive about the origin of the goods and services. Specifically, Plaintiffs accuse Defendants of using their marks on its website and in a targeted mail campaign.  (*Id.*)  In Thompson's Declaration (ECF No. 6), Thompson provides:

> On or about March 28, 2024, I viewed Elevator Works' website and observed the registered marks for Savaria, Serial Number of 77960467 and a Registration Number of 4184685, and Garaventa Lift, Serial Number of 79024708 and a Registration Number of 3288347 prominently displayed. Elevator Works was never authorized or provided permission to prominently display those registered trademarks on its website.

(*Id.* at 8 ¶ 27.)  Thompson further provides that sometime after Savaria served cease-and-desist letters, Elevator Works stopped displaying these registered marks.  (*Id.* at 8 ¶ 28.)  In Biles's Declaration (ECF No. 4), Biles provides:

> In our telephone conversations between April 24 and April 29, Mr. Hirsch represented to me that Defendant Elevator Works used Plaintiffs registered trademarks on an advertisement that Defendants caused to be circulated to 13,588 recipients through a direct mail campaign.

(*Id.* at 4 ¶ 16.)

"To prove trademark infringement, a plaintiff must show both that it has a valid, protectable trademark and that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation,' 15 U.S.C. § 1114(1), creates a likelihood of confusion."  *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir. 1997) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)).

According to Defendants, Plaintiffs are not likely to succeed on its infringement claim. (ECF No. 17-1 at 13–15.)  Defendants appear to concede that they "used Savaria's logo, along with numerous other elevator brand logos, under the statement "Elevator Works services all

Major Home Elevator Brands" in the Flyer and similar logos were presented on Elevator Works' website.  (*Id.* at 14.)  Defendants emphasize that it "removed those logos from its website out of an abundance of caution."  (*Id.*)  Defendants contend that their use of Plaintiffs' trademark was "nominative."  (*Id.* at 14–15.)

As the Fourth Circuit explained in *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012), a "nominative use is nominative use is one in which the defendant uses the plaintiff's trademark to identify the plaintiff's own goods," *id.* at 154 (citing *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010)), and "'makes it clear to consumers that the plaintiff, not the defendant, is the source of the trade-marked product or service,'" *id.* (quoting *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 220 (3d Cir. 2005)).  An example of this type of use would be where an automobile repair shop specializing in foreign vehicles runs an advertisement using the trademarked names of various makes and models to highlight the kind of cars it repairs.  *Id.* (citing *New Kids On The Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 306–07 (9th Cir. 1992)).  Nominative use is a type of fair use excluded from liability under 15 U.S.C. § 1125(c)(3).  *Radiance Found., Inc. v. NAACP*, 786 F.3d 316, 330–31 (4th Cir. 2015).

This Court agrees that Defendants' use on their website and on the mailer likely constitutes nominative fair use and is therefore inactionable.  Plaintiffs have not meaningfully refuted this point.  As such, this Court finds that Plaintiffs have not established at this stage in the proceedings a likelihood of success on Count XIV.

### B.  The Remaining *Winter* Factors

A TRO, much like a preliminary injunction, affords "an extraordinary and drastic remedy" prior to trial.  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).  Since preliminary

injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id.* As detailed above and as detailed on the record at this Court's May 14, 2024 motions hearing, Savaria's right to relief is not indisputably clear.

Having found that Plaintiffs have failed to carry their burden to clearly show a likelihood of success on the merits, this Court need not consider the remaining three *Winter* factors. *Henderson*, 902 F.3d at 439.

## II.    Plaintiffs' Motion to Expedite Discovery for Preliminary Injunction Hearing (ECF No. 3)

Plaintiffs state that they filed a Motion to Expedite Discovery in order to prepare for a preliminary injunction hearing. (ECF No. 3.) Therein, Plaintiffs request the Court enter an Order requiring (1) Defendants respond to Plaintiff's Motion by May 7, 2024; (2) and any reply memoranda due by May 10, 2024; (3) Defendants respond to the expedited requests for production of documents within 10 days from the grant of the Motion, or within 30 days of service, whichever is earlier; (4) Defendants make a corporate designee available for deposition of up to four hours prior to the preliminary injunction hearing; and (5) An evidentiary hearing on Plaintiff's Motion for Preliminary Injunction will be held on May 30, 2024. While requests (1) and (2) were mooted by this Court's May 6, 2024 Letter Order (ECF No. 11), requests (3), (4), and (5) remain pending.

Fed. R. Civ. P. 26(d)(1) provides that a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by

these rules, by stipulation, or by court order." Rules 30(a)(2) and 34(b)(2)(A) further allow the court to expedite the timelines for responding to document requests and for depositions. *See L'Occitane, Inc. v. Trans Source Logistics, Inc.*, 2009 U.S. Dist. LEXIS 101819, 2009 WL 3746690, at *1 (D. Md. Nov. 2, 2009) (citations omitted). "Expedited discovery is particularly appropriate where a preliminary injunction is sought." *Id.* (citing *Ciena Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000); *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1220 (4th Cir. 1980)). Courts in this District have adopted a reasonableness standard in reviewing expedited discovery requests, determining whether the request is supported by good cause considering the totality of the circumstances. *See Oce N. Am., Inc. v. MCS Servs.*, 2010 U.S. Dist. LEXIS 150617, 2010 WL 11553001, at *1 (D. Md. June 22, 2010).

As explained on the record, this Court does not believe that good cause exists for limited expedited discovery in aid of a preliminary injunction. As such, Plaintiffs' Motion to Expedite Discovery for Preliminary Injunction Hearing (ECF No. 3) is DENIED.

## CONCLUSION

For the reasons stated above as well as on the record at this Court's May 14, 2024 hearing, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 1) is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiffs' request is GRANTED with respect to the relief afforded to the Plaintiffs in this Court's May 14, 2024 Order (ECF No. 21).  It is DENIED in all other respects.  Plaintiffs' Motion to Expedite Discovery for Preliminary Injunction Hearing (ECF No. 3) is DENIED.

A separate Order follows.

Dated: May 16, 2024

_/s/_____
Richard D. Bennett
United States Senior District Judge